IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOM G., | ) |
|         Plaintiff, | ) |
| | ) No. 21-cv-03669 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
|         Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tom G. seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. He argues that the administrative law judge ("ALJ") erred by failing to consider properly his non-severe mental impairments when assessing his residual functional capacity ("RFC"). The Court agrees. Accordingly, the ALJ's decision is reversed and the case remanded for further proceedings.

## BACKGROUND

Plaintiff filed his underlying application for disability insurance benefits on June 29 2018, claiming that he had been unable to work since June 20, 2018 due to depression, anxiety, and post-traumatic stress disorder ("PTSD"). (Admin. Record ("A.R.") at 75, Dkt. Nos. 8-1, 8-2, 8-3.) Plaintiff's application for disability benefits was denied initially on December 11, 2018 and again upon reconsideration on April 23, 2019—both times based on a determination that he was not disabled. (*Id.* at 78, 89.) Plaintiff sought further administrative review and, one year later, had a hearing before the ALJ. (*Id.* at 13.)

The ALJ held the hearing telephonically "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." (*Id.*) Along with the ALJ and Plaintiff, Plaintiff's counsel and an impartial vocational expert, Kari Seaver-Ready, attended the telephonic hearing. (*Id.*) The hearing included testimony from both Plaintiff and Seaver-Ready. After the hearing, the ALJ sought opinions from two medical experts, Robert K. Heidrich, Psy.D. and Michael Carney, Ph.D. (*Id.* at 25.) Their opinions were not in the record at the time of the telephonic hearing, but the ALJ requested after the hearing that each expert respond to interrogatories. (*Id.* at 1384–1407 (Heidrich); 1408–30 (Carney).) Following the hearing and submissions from Heidrich and Carney, the ALJ issued a written opinion denying Plaintiff's application for benefits. (*Id.* at 10–27.)

Plaintiff's hearing before the ALJ touched on both the mental health issues he initially cited when seeking disability benefits and physical impairments. As the ALJ's decision notes, Plaintiff testified that he had a heart attack that required stenting and bypass surgery. (*Id.* at 23.) The record reveals that during surgery to have a stent placed, the doctor isolated the wrong artery and woke up Plaintiff to tell him that they would need to extend his surgery to stent the proper artery. (*Id.* at 321.) During the brief period he was awake, Plaintiff was unable to breathe due to anesthesia and feared that he was dying. (*Id.*)

Plaintiff testified that after that experience he began experiencing symptoms of PTSD, anxiety, and depression. (*Id.* at 53–54.) The record shows that doctors prescribed him large doses of Xanax and Vicodin, from which he experienced significant side effects, including blacking out while driving on the highway and falling into a coffee table. (*Id.* at 321.) After his fall, Plaintiff contacted his brother, who took him to Lutheran General Hospital, located outside Chicago. (*Id.*) The ALJ's decision notes that Plaintiff was admitted to the psychiatric unit at

2

Lutheran General for about a week. (*Id.* at 17 (citing *id.* at 523).) Plaintiff has since re-worked his medications and dosages so that his side effects are not so acute but side effects remain; he testified that his current medication regimen prevents him from functioning properly during the day. (*Id.* at 60.) He also testified to weakness, unsteadiness, dizziness, and a lack of focus—in particular, he described one instance during a job interview when, mid-answer, he lost his train of thought, and further that he occasionally experiences panic attacks. (*Id.* at 61.)

Besides his heart and mental health issues, Plaintiff also testified that he has problems with his back. These include a bulging disc in his back that, in the past, he has treated through exercise and stretching. (*Id.* at 52–53.) The ALJ found that Plaintiff was referred to physical therapy twice and surgery was recommended, but Plaintiff declined to follow through with any of those recommendations; he now exercises less often and most of his physical activity comes from walks. (*Id.* at 23.) He testified that he is able to sit for around an hour or two at a time. (*Id.* at 62.)

After the hearing, the ALJ issued a written decision finding Plaintiff not disabled and denying his application for benefits. In so doing, the ALJ engaged in the five-step inquiry used for analyzing disability claims: (1) whether Plaintiff engaged in substantial gainful activity; (2) whether the claimed physical or mental condition is severe and meets the twelve-month duration requirement; (3) whether Plaintiff's conditions meet or are equivalent to a condition listed in the Regulations; (4) whether, considering his RFC,[1] Plaintiff can perform his past relevant work; and (5) taking into consideration his RFC, age, education, and work experience, whether Plaintiff can

---

[1] RFC is determined between Steps 3 and 4 and applied in the Step 4 and 5 analyses. It is "the most [a claimant] can still do despite [his] limitations," and takes into consideration "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1).

make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(i)–(v). Since the ALJ found at Step 4 that Plaintiff could perform his past relevant work, he terminated the analysis there.

Step 1 was relatively straightforward. The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of his disability: June 20, 2018. (A.R. at 15.)

Next, in determining severity under Step 2, the ALJ went through all Plaintiff's potential impairments. While Step 2 is not the stage at which RFC is determined, the ALJ noted there that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]." (*Id.* at 17.) The ALJ found one severe impairment: Plaintiff's degenerative disc disease of the lumbar spine. (*Id.* at 16.) As to Plaintiff's heart impairments, the ALJ found that they are non-severe. While noting that Plaintiff clearly has had issues with his heart—in particular, a heart attack and multiple surgeries—the ALJ stated that there was little evidence pointing to hypertension or hyperlipidemia. (*Id.* at 16.) The ALJ also noted that examinations showed regular heart rate and rhythm, and that at a July 2018 examination with a cardiologist, Plaintiff was able to engage in aerobic exercise without limitations. (*Id.*)

The ALJ also analyzed Plaintiff's mental impairments at Step 2. He determined that, both alone and in the aggregate, such impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non[-]severe." (*Id.* at 17.) The ALJ described Plaintiff's stay in the Lutheran General psychiatric unit, as well as a number of follow-up appointments with various mental health practitioners and other psychological evaluations. (*Id.* at 17–20.) For the most part, Plaintiff described a low mood to his treating physicians. (*Id.*) On occasion, he described suicidal ideation, although never with plan or

intent. (*Id.* at 18 (citing *id.* at 669); 19 (citing *id.* at 822, 836).) And treaters also described Plaintiff as exhibiting reasonable insight, judgment, and cognition. On one occasion, Plaintiff was oriented times three, but on all others he was oriented times four.[2] (*Id.* at 18–20.)

The ALJ also considered Plaintiff's degree of limitation in the four broad areas of mental functioning known as the "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). Each category is rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Absent evidence "that there is a more than minimal limitation in [the claimant's] ability to do basic work activities," ratings of "none" to "mild" result in a finding that the mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

With respect to Plaintiff, the ALJ found mild limitations in each of the first three categories and no limitation in the final category—adapting or managing oneself. (A.R. at 20–21.) As to the first category, the ALJ found that while Plaintiff alleged "short-term memory loss, forgetfulness, and an inability to concentrate," he nonetheless exhibited no issues with personal care, understanding treatment recommendations, or maintaining conversation. (*Id.* at 20.) The ALJ also noted that, at appointments with Dr. George Brodsky on December 17, 2018 and September 20, 2018, Plaintiff denied any cognitive decline. (*Id.* (citing *id.* at 467–68, 470, 472).) With respect to the second category, interacting with others, the ALJ found that Plaintiff is fairly social—he visits family, bowls once a week, attends meetings at an Alano club, has a normal

---

[2] "Oriented times four" refers to a person being oriented to person, place, time, and situation—that is, they know who they are, where they are, what time it is, and what has just happened. Times four is the highest level of orientation. On the one cited occasion when Plaintiff was oriented times three rather than times four, he was also cooperative and not agitated; the examination notes do not explain what the missing orientation was. (A.R. at 468.)

range of moods, and has never had difficulty at a job due to inability to get along with a supervisor. (*Id.* at 20–21.) And as to the third category—concentrating, persisting, or maintaining pace—Plaintiff's allegations again did not entirely match the body of evidence, as the ALJ found that no treatment notes supported his claims of "short-term memory loss, forgetfulness, and an inability to concentrate." (*Id.* at 21.) Based on those findings, the ALJ determined that Plaintiff's mental impairments were not severe.

Step 3 only considers severe impairments and asks whether they meet or equal the severity of certain listed impairments. Plaintiff's only severe impairment was his degenerative disc disease, which did not meet or equal the severity of any on the relevant list. (*Id.* at 22.) Because the back impairment did not automatically qualify Plaintiff for disability, the ALJ proceeded to determine Plaintiff's RFC, which would then be used in Steps 4 and 5. At the end of his Step 2 analysis, the ALJ noted that the identified limitations are merely used to determine severity and are not an RFC analysis; RFC is determined after Step 3 and used in Steps 4 and 5. (*Id.* at 21.) At Step 2, the ALJ specified that "[t]he following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." (*Id.*)

The only explicit consideration of mental limitations in the ALJ's ensuing RFC analysis are references to an initial review level analysis conducted by David Voss, Ph.D., a state agency psychological consultant; a reconsideration level analysis conducted by Keith Burton, Ph.D., also a state agency psychological consultant; and post-hearing opinions from two medical experts, Heidrich and Carney, to whom the ALJ sent interrogatories. (*Id.* at 25–26.) Whether and to what extent the ALJ intended to incorporate his Step 2 analysis of mental limitations into the RFC analysis is not clear. The ALJ found Voss's findings unpersuasive and did not rely on Heidrich's opinions. He found Voss unpersuasive because he had been presented with very little evidence

6

and ultimately found that there was insufficient evidence to make a determination; moreover, since the initial level of review, Plaintiff had undergone additional examinations and provided more records. (*Id.* at 25.) The ALJ did not rely on Heidrich's opinion because Plaintiff's counsel had requested that additional interrogatories be sent to Heidrich—that is, interrogatories to supplement those initially sent by the ALJ—but the interrogatories were mistakenly sent to Carney, the other expert. (*Id.*) Burton, who the ALJ considered persuasive, found that depressive and anxiety disorders were medically determinable, but that they were non-severe with mild limitations in two of the four Paragraph B criteria. Carney, who the ALJ found persuasive, noted a number of diagnoses Plaintiff had received and found mild limitations in three of the four Paragraph B criteria, specifically noting that anxiety and panic attacks did not appear to affect Plaintiff's functioning and that his diagnosis of major depressive disorder had recently been downgraded to adjustment order with depression. (*Id.* at 25–26.) The bulk of Plaintiff's anxiety, Carney opined, was fear of another cardiac event, presumably stemming from the incident in which Plaintiff was awoken during surgery.

      The ALJ did consider other characteristics in making his RFC determination, but it is not clear whether he was analyzing physical impairments, mental impairments, or both. (*Id.* at 24.) He states that Plaintiff's "daily activities are not entirely consistent with his allegations of disabling symptoms." (*Id.*) He cites security work that Plaintiff performed, aerobic and weightlifting exercise, independence in self-care, and that Plaintiff rents a room in somebody else's home. (*Id.*) The ALJ also points to Plaintiff's overall independence, daily walks, and socialization, which includes weekly bowling and regular phone calls and visits with friends. (*Id.*) But it is not clear which activities the ALJ found dissonant with Plaintiff's claims of mental impairment and which he found dissonant with his claims of physical impairment.

7

Based on his RFC analysis, the ALJ did not impose any mental impairment limitations on Plaintiff. Rather, the only limitation he imposed was that Plaintiff "should never climb ladders, ropes, or scaffolds and can occasionally climb ramps or stairs and can occasionally stoop, kneel, crouch, and crawl." (*Id.* at 26.) Applying this RFC at Step 4, the ALJ found—based on the vocational expert's testimony at Plaintiff's hearing—that Plaintiff was capable of performing his past work, both as it is actually and generally performed. Because the Step 4 analysis resulted in a finding that Plaintiff could work, the ALJ stopped his analysis there and did not proceed to Step 5. The ALJ's final decision was that Plaintiff was not disabled. (*Id.* at 27.) Plaintiff now appeals that decision.

## DISCUSSION

Federal courts review "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). An ALJ's determination will be reversed only "if it is the result of an error of law or it is not supported by substantial evidence." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F. 3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). It is not this Court's job to reweigh evidence or replace the ALJ's judgment with its own. *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). But when an ALJ denies benefits, he must "provide a logical bridge between the evidence and his conclusions." *Jarnutowski*, 48 F.4th at 773 (internal quotation marks omitted).

Plaintiff argues that the ALJ's decision cannot stand because he found that Plaintiff had non-severe mental limitations at Step 2 but then failed to consider those non-severe limitations at the RFC stage. The Commissioner agrees that non-severe limitations must be considered in the RFC analysis but notes that there is no requirement that non-severe mental limitations be

8

included in the final RFC. In other words, the Commissioner contends that the ALJ did consider Plaintiff's mental impairments at the RFC stage but simply came to a conclusion adverse to the Plaintiff. The Court cannot agree.

The ALJ conducted a detailed analysis of Plaintiff's mental impairments at Step 2. But it is not clear to what extent, if at all, the ALJ considered that evidence at the RFC stage. True, "the sequential process is not so rigidly compartmentalized," and analysis at one stage may support a lack of analysis at a subsequent (or prior) stage. *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021). But the ALJ himself acknowledged that his Step 2 analysis was not an RFC analysis, and that "[t]he mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment." (A.R. at 21.) Yet at Step 4, the ALJ performed no analysis of Plaintiff's mental limitations, and his RFC analysis was far less detailed than the analysis at Step 2.

Moreover, the record reveals evidence that calls for a more precise analysis at the RFC stage than the ALJ conducted. At the time of the hearing, for example, Plaintiff testified that he was in the process of trying to alter his medication regime to prevent some of the side effects he had experienced while taking Xanax and Vicodin, including blacking out while driving on the highway and fainting into a coffee table. (*Id.* at 58–59.) This appears to have been ongoing since 2018. (*Id.*) But, as he testified, his medication regime "makes it hard to function during the day." (*Id.* at 60.) The ALJ did not address this in his decision, and it could bear on Plaintiff's ability to perform complex work. Perhaps the ALJ found the information unreliable, but the Court cannot infer reasoning from silence.

Plaintiff also testified that he had difficulty maintaining a constant train of thought due to side effects from his medication, describing an instance during a job interview where he lost his train of thought mid-answer, "completely forget[ting] what [he] was talking about." (*Id.* at 60.)

9

Again, this testimony is not mentioned in either the RFC analysis or in Step 2. And to the extent the ALJ found mild impairments in Plaintiff's ability to interact with others unconvincing in light of the record, he does not explain how occasionally talking on the phone, visiting a next-door neighbor, and participating in a bowling league indicate that no restrictions are warranted. Plaintiff's past work as a buyer and planner is arguably social in nature, and the record indicates someone whose social functioning has been altered after the onset of his mental impairments. If the ALJ found Plaintiff's testimony unconvincing or otherwise had a reason for his decision, he did not explain himself.

One paragraph in the RFC analysis, aside from the four outside opinions the ALJ cites, may refer to Plaintiff's mental impairments. (*See* A.R. at 24.) But the passage just as easily could refer to Plaintiff's back and heart issues, particularly given that it appears in the context of a discussion regarding Plaintiff's physical impairments. Aside from that passage, it is not clear that the ALJ "consider[ed] the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Burton, who reviewed Plaintiff's file at the reconsideration level, found mild impairments in interacting with others and in concentrating, persisting, or maintaining pace. Carney, who reviewed the case after the hearing, also found mild limitations in those two categories and also in understanding, remembering, or applying information. The ALJ simply offers this information and does not tie it to his RFC determination in any way. Plaintiff has worked at skilled jobs that require multi-variable problem solving and interacting with others. If he has limitations with concentrating, remembering information, and interacting with others, the ALJ should have explained why—despite finding Carney and Burton persuasive—he chose not to include any mental limitations in Plaintiff's RFC. And if he found Plaintiff's testimony

10

regarding his difficulty staying focused and maintaining a train of thought unpersuasive, he should have at the least said so and, better yet, stated why.

At the ALJ hearing, the vocational expert testified that if Plaintiff were unable to perform detailed but not complex tasks, he would not have been able to perform his past work for purposes of Step 4. (A.R. at 69.) This testimony indicates that the ALJ's determination as to Plaintiff's mental limitations had a material effect on the outcome of the disability determination. Perhaps the body of evidence supports the ALJ's decision. But it is not possible to build the necessary logical bridge based on his decision as written. Yes, the ALJ conducted a detailed analysis at Step 2. But his Step 2 conclusion is not an RFC conclusion. The ALJ need not copy and paste each fact he considered at Step 2 into his RFC analysis, but he does need to support his RFC conclusion. The ALJ has provided some of the information he considered and given his answer, but he failed to show his work sufficiently. The ALJ's decision must therefore be reversed and remanded for further proceedings.[3]

---

[3] Plaintiff also mounted a constitutional separation of powers argument regarding the removability of the Commissioner. Because the case is remanded for further consideration, the Court need not consider this issue. *See Koger v. Bryan*, 523 F.3d 789, 801 (7th Cir. 2008) (stating that the Court must "avoid making unnecessary constitutional decisions") (internal quotation marks omitted)).

11

**CONCLUSION**

For the foregoing reasons, the decision denying Plaintiff's application for disability insurance is reversed and remanded for further proceedings consistent with this opinion. Pursuant to Rule 5 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), it is no longer necessary for parties to style requests for relief as motions for summary judgment. Accordingly, the Commissioner's motion for summary judgment in its favor (Dkt. No. 13) will be terminated as moot. The Clerk is directed to enter Judgment in favor of Plaintiff.

ENTERED:

Dated: September 25, 2023

_____
Andrea R. Wood
United States District Judge